# Exhibit B

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**DAKOTA COMPTON**
**4 Oak Grove Avenue**
**Baltimore, MD 21228**

    **Plaintiff,**

vs.

                           **Case No. _____**

**STATE OF MARYLAND, THE**
**MARYLAND TRANSPORTATION**
**AUTHORITY MDTA**
**Serve: Nancy K. Kopp, Treasurer**
    **20 Calvert Street Room 109**
    **Annapolis, MD 21401**
**Serve: Peter K. Rahn, Secretary of**
    **Maryland MDTA**
    **7201 Corporate Center Drive**
    **Hanover, MD 21076**

**AND**

**SATISH BHARDWAJ**
**8537 Stevenswood Road**
**Baltimore, MD 21244**
    **Defendants.**

10 DEC 12 PM 1:38

CIVIL DIVISION

*************************************************************************************

## COMPLAINT

### FOR

### VIOLATIONS OF EMPLOYMENT CIVIL RIGHTS

Now Comes Dakota Compton, by and through his undersigned counsel, with knowledge as to himself, and upon information and belief as to all else, hereby complains against the Defendant State of Maryland, the Defendant Maryland Transportation Authority (MDTA) and the Defendant Satish Bhardwaj, as follows:

## NATURE OF CLAIM

1. This is an action for declaratory and injunctive relief and for damages, brought to remedy violations of employment civil rights.

2. That the Plaintiff Dakota Compton (hereinafter "the Plaintiff" or "Mr. Compton") exhausted all administrative prerequisites prior to filing this cause of action against the Defendant State of Maryland and Defendant Maryland Transportation Authority (MDTA)(hereinafter collectively the "Defendant," "Maryland MDTA" and/or "MDTA"). A right to file lawsuit with this Honorable Court was issued and is attached hereto.

3. That the Plaintiff is an adult male resident of Baltimore County, Maryland. That at all relevant times the Plaintiff was a full time employee of the MDTA. The Plaintiff reported directly to MDTA supervisor, the Defendant Satish Bhardwaj ("Mr. Bhardwaj").

4. That the Defendant Maryland MDTA operates as a state government agency responsible for financing, constructing, operating, and maintaining Maryland public toll plaza facilities, tunnels and bridges.

5. That all acts occurred in the State of Maryland and this Honorable Court has concurrent jurisdiction over the subject matter involved in this case.

## STATEMENT OF FACTS

## PLAINTIFF'S JOB AND PERFORMANCE

6. That the Plaintiff began work for Defendant Maryland MDTA in August, 2010. He was hired to work as a Facility Maintenance Technician and promoted to a position known as Customer and Revenue Agent.

7. That throughout his employment with MDTA, the Plaintiff always performed his position well and exceeded reasonable expectations of supervisors. Mr. Compton met and

exceeded all reasonably objective performance standards. He was promoted and received increases in pay several times.

## SEXUAL HARASSMENT

8. The Plaintiff at all relevant times throughout the incidents of this case directly reported to MDTA supervisor Mr. Bhardwaj.

9. That over a significant length of time which lasted a period of several months, nearly on a daily basis, from August 1, 2016 to March 30, 2017, the Plaintiff was subjected to unwelcome and unwanted lewd sexual acts perpetrated by the Defendant Satish Bhardwaj, in the form of derogatory and extremely vulgar and abusive language, pornographic material, sexual comments about Mr. Compton's relationship with his significant other, was invited repeatedly to engage in lewd sexual acts and Mr. Compton was subjected to acts of battery and/or unwanted physical touching (hereinafter collectively "sexual acts").

10. Mr. Compton repeatedly requested that Mr. Bhardwaj leave him alone and cease and desist from any further sexual acts. Notwithstanding such requests, the said sexual acts continued. In fact, Mr. Bhardwaj appeared to take pleasure in humiliating Mr. Compton and making Mr. Compton uncomfortable with such sexual acts.

11. The said sexual acts culminated with abusive physical contact wherein Mr. Bhardwaj thrusted his genitals against Mr. Compton. All acts were unwanted and unwelcome.

12. Mr. Compton complained to Mr. Bhardwaj and Mr. Bhardwaj's direct supervisor, Ms. Sarah Jennifer Williams ("Ms. Williams"). Mr. Bhardwaj ignored and/or laughed at Mr.

Compton's complaints. Ms. Williams did nothing to control or discipline Mr. Bhardwaj's behavior and the sexual acts continued.

13. All of the above sexual acts occurred when Mr. Bhardwaj was a direct supervisor of the Plaintiff.

14. Upon information and belief, Mr. Bhardwaj had a prior history of perpetrating similar sexual acts against MDTA employees. The MDTA knew or had reason to know that Mr. Bhardwaj engaged in a history of such sexual acts against other employees and that he had a history of polluting the MDTA workplace with a hostile work environment.

15. That Mr. Compton continued to protest such sexual acts of Mr. Bhardwaj, indicating that he was the victim of employment civil rights violations and that Mr. Bhardwaj committed acts of sexual harassment. No action was taken by the MDTA to discipline or remove Mr. Bhardwaj from his position and the sexual harassment continued.

16. That Mr. Compton finally filed a complaint with the MDTA "internally" on or about March 30, 2017 ("MDTA internal complaint"). As a result of same, the MDTA conducted an investigation into Mr. Compton's allegations against Mr. Bhardwaj ("MDTA investigation").

17. Following the said MDTA investigation, the MDTA fired Mr. Bhardwaj based on his repugnant sexual acts against Mr. Compton. The MDTA determined there was overwhelming evidence that Mr. Compton's allegations were true.

18. There is no dispute, and can be no dispute, based on the MDTA's own investigation, that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

19.    There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to Mr. Compton for the acts of Mr. Bhardwaj.

20.    Upon information and belief, the MDTA also administered disciplinary action against Ms. Williams for not taking sufficient remedial acts to control and discipline Mr. Bhardwaj. Ms. Williams was not discharged but separated from employment with the MDTA shortly after the incidents of this case came to light ("separation").

## RETALIATION

21.    Prior to Ms. Williams' said separation from the MDTA, and while the said MDTA internal investigation was ongoing and the facts of this case were coming to light, Ms. Williams unlawfully retaliated against Mr. Compton for his having pursued a sexual harassment complaint against Mr. Bhardwaj.

22.    Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

23.    Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

24.    Mr. Compton had an extensive history of exemplary employment with the MDTA over many years of service. Before he complained he was the victim of sexual harassment, Mr. Compton had never been disciplined, was never written up, nor accused that he committed a work place rule violation. Mr. Compton enjoyed a stellar work history and had always planned to retire from the MDTA.

25.    Ms. Williams perpetrated false statements about Mr. Compton's performance. Ms. Williams fraudulently alleged that Mr. Compton was responsible for a "cash shortage."

26.  Instead of apologizing to Mr. Compton for her own poor management and otherwise failing to control and discipline Mr. Bhardwaj for his sexual predatory acts against Mr. Compton, Ms. Williams retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a cash shortage is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation, jeopardize his employment with the MDTA and retaliate against him.

## TANGIBLE EMPLOYMENT ACTION

27.  The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so physically and emotionally tortured, that he suffered a mental break down, was unable to function mentally as he normally did, unable to work, and unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

28.  The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman on or about June 8, 2017.

29.  According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and *"...it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job..."*

30. It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider, to fairly evaluate Mr. Compton's fitness to return to work.

31. Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and was forced to undergo medical leave.

32. The MDTA discharged Mr. Compton while Mr. Compton was on said medical leave.

## CAUSES OF ACTION

### Count One

### *Violation of Maryland's SGA Title 20*
### *(Sexual Hostile Environment)*

33. That Plaintiff reincorporates Paragraphs 1-32, as if fully set forth herein.

34. That the Plaintiff was at all relevant times a full time employee of the Defendant Maryland MDTA and qualifies for relief as pursuant to Maryland's State Government Article Title 20 on Human Relations (hereinafter "SGA"), which Maryland state civil rights and remedies mirror rights and remedies pursuant to its federal counterpart "Title VII."

35. That the above paragraphs 1 through 32, which are incorporated herein as if fully set forth herein, constitute sex and/or gender discrimination and the creation of a sexual hostile environment in violation of Maryland's SGA Title 20, and the specified acts against him were severe and/or pervasive and otherwise interfered with his ability to perform.

36. That Plaintiff complained of said unlawful, unwanted and unwelcomed acts against him, but obtained no relief.

37. That all of the above acts constitute a continuing violation of Plaintiff's rights to be free from sexual discrimination, harassment and/or hostile work environment under Maryland law.

38. The sexual harassment involved extremely offensive conduct which was both severe and pervasive and created a hostile work environment that a reasonable person would consider intimidating, hostile and abusive.

39. That Plaintiff was singled out from virtually all other employees. Plaintiff was repeatedly subjected to physical and mental abuse by a direct supervisor.

40. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

41. That said unlawful acts were intolerable under reasonably objective and subjective standards.

42. That the Defendants' conduct resulted in Plaintiff's wrongful discharge, and consequently inflicted economic and other harm on Plaintiff's well-being.

43. That Plaintiff suffered damages to his reputation, was caused to change employment, and suffered humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him for which he is entitled a remedy under Maryland SGA Title 20.

## Count Two

### Violation of Maryland's SGA Title 20
### (Retaliation)

44. That Plaintiff reincorporates Paragraphs 1-43, as if fully set forth herein.

45. That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to Maryland's SGA Title 20.

46. That the Defendant engaged in acts of retaliation against the Plaintiff which resulted in loss of employment, loss of equal employment opportunities, loss of training and loss of promotion.

47. There is no dispute, and can be no dispute, based on the MDTA's own "investigation," that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

48. There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to Mr. Compton for the acts of Mr. Bhardwaj, as Mr. Bhardwaj was Mr. Compton's direct supervisor.

49. Mr. Bhardwaj was fired based on his acts of sexual harassment against the Plaintiff.

50. Ms. Williams did not take action to control and discipline Mr. Bhardwaj.

51. Ms. Williams separated from employment with the MDTA after the incidents of this case

52. Prior to such separation from employment with the MDTA, Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

53. Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

54. Mr. Compton has an extensive history of exemplary employment with the MDTA over many years of service. Before he complained he was the victim of sexual harassment, Mr. Compton had never been disciplined, never written up, nor committed a work place rule violation. Before he was the victim of sexual harassment, Mr. Compton enjoyed a stellar work history and planned to retire from the MDTA.

55. Mr. Compton was attacked by Ms. Williams with false statements about his performance. Ms. Williams perpetrated fraudulent statements about Mr. Compton's performance, alleging Mr. Compton was responsible for a cash shortage.

56. Ms. Williams attacked and retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a "cash shortage" is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation and employment with the MDTA.

57. The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so physically and emotionally tortured, that he suffered a mental break down and was unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

58. The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman.

59. According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and "...it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job..."

60.    It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider to fairly evaluate Mr. Compton's fitness to return to work.

61.    Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and forced to undergo medical leave.

62.    The MDTA discharged the Mr. Compton while Mr. Compton was on said medical leave.

63.    The Plaintiff was forced to seek medical leave based on the MDTA's acts of sexual harassment and retaliation.

64.    That the Defendants retaliated against the Plaintiff for protesting civil rights violations as an employee of the Defendant MDTA and voicing his concerns that he was the victim of discrimination.

65.    That the above facts have been timely filed and investigated by the Federal Equal Employment Opportunity Commission over a period of several years under Charge Number 531-2017-01488. Investigators at the EEOC spoke with persons directly involved with the facts of this case and received correspondence from attorneys hired by the Defendants to answer the charge filed by the Plaintiff.

66.    The EEOC issued the Plaintiff a notice of suit rights. Please see the attached. Plaintiff exhausted all administrative remedies with the EEOC prior to filing this suit and has the right to file this case before this Honorable Court.

67.    That the Defendants wrongfully discharged the Plaintiff in retaliation for his protestations of being subjected to unlawful violations of employment civil rights.

68.    That the Defendants' acts of retaliation violate Maryland law as pursuant to Maryland's SGA Title 20.

11

69. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

70. That the Defendants' conduct resulted in Plaintiff's wrongful discharge and consequently inflicted long term economic damages on the Plaintiff's well-being.

71. That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, and suffered other loss for which he is entitled a remedy under Maryland's SGA Title 20.

## Count Three

### *Violation of Title VII*
### *(Sexual Hostile Environment)*

72. That Plaintiff reincorporates Paragraphs 1-71, as if fully set forth herein.

73. That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to *Title VII of the Civil Rights Act of 1964, et. seq., as amended ("Title VII")*.

74. That the above paragraphs 1 through 71, which are incorporated herein as if fully set forth herein, constitute sex and/or gender discrimination and sexual hostile environment in violation of *Title VII*, and the specified acts against him were severe and/or pervasive and otherwise interfered with his ability to perform.

75. That Plaintiff complained of said unlawful, unwanted and unwelcomed acts against him, but obtained no relief.

76. That all of the above acts constitute a continuing violation of Plaintiff's rights to be free from sexual discrimination, harassment and/or hostile work environment under Maryland law.

77. The sexual harassment involved extremely offensive conduct which was both severe and pervasive and created a hostile work environment that a reasonable person would consider intimidating, hostile and abusive.

78. That Plaintiff was singled out from virtually all other employees. Plaintiff was repeatedly subjected to physical and mental abuse by a direct supervisor.

79. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

80. That said unlawful acts were intolerable under reasonably objective and subjective standards.

81. That the Defendants' conduct resulted in Plaintiff's wrongful discharge, and consequently inflicted economic and other harm on Plaintiff's well-being.

82. That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him, for which he is entitled a remedy under *Title VII*.

## Count Four

### *Violation of Title VII*

### *(Retaliation)*

83. That Plaintiff reincorporates Paragraphs 1-82, as if fully set forth herein.

84. That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to *Title VII*.

85. That the Defendant engaged in acts of retaliation against the Plaintiff which resulted in loss of employment, loss of equal employment opportunities, loss of training and loss of promotion.

86. There is no dispute, and can be no dispute, based on the MDTA's own "investigation," that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

87. There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to Mr. Compton for the acts of Mr. Bhardwaj, as Mr. Bhardwaj was Mr. Compton's direct supervisor.

88. Mr. Bhardwaj was fired based on his acts of sexual harassment against the Plaintiff.

89. Ms. Williams did not take action to control and discipline Mr. Bhardwaj.

90. Ms. Williams separated from employment with the MDTA after the incidents of this case

91. Prior to such separation from employment with the MDTA, Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

92. Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

93. Mr. Compton has an extensive history of exemplary employment with the MDTA over many years of service. Before he complained he was the victim of sexual harassment, Mr. Compton had never been disciplined, never written up, nor been alleged to have committed a work place rule violation. Before he was the victim of sexual harassment, Mr. Compton enjoyed a stellar work history and planned to retire from the MDTA.

14

94.    Mr. Compton was attacked by Ms. Williams with false statements about his performance. Ms. Williams perpetrated fraudulent statements about Mr. Compton's performance alleging Mr. Compton was responsible for a cash shortage.

95.    Ms. Williams attacked and retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a "cash shortage" is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation and employment with the MDTA.

96.    The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so physically and emotionally tortured, that he suffered a mental break down and was unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

97.    The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman.

98.    According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and "...*it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job...*"

99.  It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider to fairly evaluate Mr. Compton's fitness to return to work.

100.  Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and forced to undergo medical leave.

101.  The MDTA discharged Mr. Compton while Mr. Compton was on said medical leave.

102.  The Plaintiff was forced to seek medical leave based on the MDTA's acts of sexual harassment and retaliation.

103.  That the Defendants retaliated against the Plaintiff for protesting civil rights violations as an employee of the Defendant MDTA and voicing his concerns that he was the victim of discrimination.

104.  That the above facts have been timely filed and investigated by the Federal Equal Employment Opportunity Commission over a period of several years under Charge Number 531-2017-01488. Investigators at the EEOC spoke with persons directly involved with the facts of this case and received correspondence from attorneys hired by the Defendant to answer the charge filed by the Plaintiff.

105.  The EEOC issued the Plaintiff a notice of suit rights. Please see the attached. Plaintiff exhausted all administrative remedies with the EEOC prior to filing this suit and has the right to file this case before this Honorable Court.

106.  That the Defendant MDTA wrongfully discharged the Plaintiff in retaliation for his protestations of being subjected to unlawful violations of employment civil rights.

107.  That the Defendant MDTA's acts of retaliation violate Maryland law as pursuant to

108. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

109. That the Defendant MDTA's conduct resulted in Plaintiff's wrongful discharge and consequently inflicted economic damages on the Plaintiff's well-being.

110. That Plaintiff was left without employment, deprived of economic wages, suffered losses in back pay and front pay, suffered damages to his reputation, was caused to change employment, suffered wage loss and other economic and financial loss for which he is entitled a remedy under *Title VII*.

111. That the Defendants' acts wrongfully discharged the Plaintiff in violation of *Title VII*.

112. That the Defendants' conduct inflicted long term economic damages on the Plaintiff's well-being.

113. That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him for which he is entitled a remedy under *Title VII*.

114. That the Plaintiff's employment records and history with the Defendants was forever altered.

## Count Five
### (Battery)
### *Against Defendant Bhardwaj*

115. That Plaintiff reincorporates Paragraphs 1-114, as if fully set forth herein.

116. That the Defendant Bhardwaj engaged in acts which included unlawful attempts to cause harmful and offensive contact with the Plaintiff and/or caused an apprehension of such contact.

117.   That the Defendant Bhardwaj engaged in acts which included intentional and unlawful threats, by words and/or acts, which physically harmed the Plaintiff.

118.   That the Plaintiff believed that the Defendant Bhardwaj at all relevant times had the ability to carry out such threats.

119.   That the Plaintiff was placed in reasonable fear of imminent harm as a result of the Defendant Bhardwaj's acts.

120.   That offensive and intentional contact and/or touching occurred, which caused the Plaintiff physical and emotional pain, injury and illness.

121.   That the offensive contact and/or touching occurred and offended the Plaintiff's reasonable sense of personal dignity.

122.   That the Plaintiff at no time consented to the above said acts perpetrated by the Defendant Bhardwaj.

123.   That the said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, physical and emotional distress, and mental anguish.

124.   That the Plaintiff was damaged by the acts of the Defendant Bhardwaj.

## Count Six
### (Intentional Infliction of Emotional Distress)
### Against all Defendants

125.   That Plaintiff reincorporates Paragraphs 1-124, as if fully set forth herein.

126.   That the Defendants' conduct was intentional and reckless.

127.   That the Defendants' conduct was extreme and outrageous.

128.   That the Defendants' conduct caused emotional distress to the Plaintiff.

129.   That the Plaintiff's emotional distress was severe.

18

130. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to severe humiliation, physical and emotional distress, and mental anguish.

131. That the Plaintiff was damaged by the acts of the Defendants.

## RELIEF REQUESTED

As to Counts One through Six, the Plaintiff Dakota Compton respectfully requests that this Honorable Court:

a. DECLARE that the conduct complained of by Plaintiff against the Defendants is in violation of the law;

b. PERMANENTLY ENJOIN the Defendants from engaging in all practices found by this Court to be in violation of the law;

c. AWARD Plaintiff compensatory damages, damages for emotional and physical pain and suffering, damages to his reputation, standing and employment history, economic damages including back and/or front pay, liquidated damages, punitive damages where permitted by law, and attorneys' fees and costs for this litigation where permitted by law, in the total amount of Five Hundred Thousand Dollars ($500,000.00), *jointly and severally*, against the Defendant State of Maryland, the Defendant Maryland Transportation Authority (MDTA) and the Defendant Satish Bhardwaj; and

d. GRANT such other and further relief to Plaintiff as the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby prays for and requests a trial by jury.

Respectfully submitted,

Mark R. Millstein, Esquire
Courtside Professional Building
110 East Lexington Street
Suite 300
Baltimore, Maryland 21202
Tel: (410) 752-5920
Fax: (410) 752-7676
Web: MILLSTEINLEGAL.COM
Mark@MillsteinLegal.Com

David M. Silbiger, Esquire
Courtside Professional Building
110 East Lexington Street
Suite 100
Baltimore, Maryland 21202
Tel: (410) 685-1616
Fax: (410) 685-4998
DSilbiger@Silbigerlawoffices.com

*Attorneys for the Plaintiff*
*Dakota Compton*

20

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Dakota Compton**
**4 Oak Grove Avenue**
**Baltimore, MD 21228**

From: **Baltimore Field Office**
**G.H. Fallon Federal Building**
**31 Hopkins Plaza, Suite 1432**
**Baltimore, MD 21201**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 531-2017-01488 | Phillip Hoefs, Investigator | (410) 209-2728 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Rosemarie Rhodes,
Director

SEP 25 2018

(Date Mailed)

Enclosures(s)

cc:
**Denise Green**
**EEO Lead Officer**
**Maryland Transportation Authority**
**2310 Broening Highway**
**Baltimore, MD 21224**

**Mark Millstein, Esq.**
**MILLSTEIN LAW OFFICES**
**110 East Lexington Street, Suite 300**
**Baltimore, MD 21202**