

PLAINTIFF'S EXHIBIT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DAKOTA COMPTON** | * |
| **Plaintiff,** | * |
| **vs.** | *   Case No. <u>**1:19-CV-00804 ELH**</u> |
| **STATE OF MARYLAND, THE MARYLAND TRANSPORTATION AUTHORITY MDTA** | * |
| | * |
| **AND** | * |
| **SATISH BHARDWAJ** | * |
| **Defendants.** | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### FIRST AMENDED COMPLAINT

### FOR

### VIOLATIONS OF EMPLOYMENT CIVIL RIGHTS

**Now Comes** Dakota Compton, by and through his undersigned counsel, with knowledge as to himself, and upon information and belief as to all else, hereby complains against the Defendant State of Maryland, the Defendant Maryland Transportation Authority (MDTA) and the Defendant Satish Bhardwaj, as follows:

### <u>NATURE OF CLAIM</u>

1.    This is an action for declaratory and injunctive relief and for damages, brought to remedy violations of employment civil rights.

2.    That the Plaintiff Dakota Compton (hereinafter "the Plaintiff" or "Mr. Compton") exhausted all administrative prerequisites prior to filing this cause of action against the Defendant State of Maryland and Defendant Maryland Transportation Authority

(MDTA)(hereinafter collectively the "Defendant," "Maryland MDTA" and/or "MDTA").
A right to file lawsuit with this Honorable Court was issued and is attached hereto.

3.      That the Plaintiff is an adult male resident of Baltimore County, Maryland. That at all
relevant times the Plaintiff was a full time employee of the MDTA. The Plaintiff reported
directly to MDTA supervisor, the Defendant Satish Bhardwaj ("Mr. Bhardwaj").

4.      That the Defendant Maryland MDTA operates as a state government agency responsible
for financing, constructing, operating, and maintaining Maryland public toll plaza
facilities, tunnels and bridges.

5.      That all acts occurred in the State of Maryland and this Honorable Court has concurrent
jurisdiction over the subject matter involved in this case.

### STATEMENT OF FACTS

### PLAINTIFF'S JOB AND PERFORMANCE

6.      That the Plaintiff began work for Defendant Maryland MDTA in August, 2010. He was
hired to work as a Facility Maintenance Technician and promoted to a position known as
Customer and Revenue Agent.

7.      That throughout his employment with MDTA, the Plaintiff always performed his position
well and exceeded reasonable expectations of supervisors. Mr. Compton met and
exceeded all reasonably objective performance standards. He was promoted and received
increases in pay several times.

### SEXUAL HARASSMENT

8.      The Plaintiff at all relevant times throughout the incidents of this case directly reported to
MDTA supervisor Mr. Bhardwaj.

9. That over a significant length of time which lasted a period of several months, nearly on a daily basis, from August 1, 2016 to March 30, 2017, the Plaintiff was subjected to unwelcome and unwanted lewd sexual acts perpetrated by the Defendant Satish Bhardwaj, in the form of derogatory and extremely vulgar and abusive language, pornographic material, sexual comments about Mr. Compton's relationship with his significant other, was invited repeatedly to engage in lewd sexual acts and Mr. Compton was subjected to acts of battery and/or unwanted physical touching (hereinafter collectively "sexual acts").

10. Mr. Compton repeatedly requested that Mr. Bhardwaj leave him alone and cease and desist from any further sexual acts. Notwithstanding such requests, the said sexual acts continued. In fact, Mr. Bhardwaj appeared to take pleasure in humiliating Mr. Compton and making Mr. Compton uncomfortable with such sexual acts.

11. The said sexual acts culminated with abusive physical contact wherein Mr. Bhardwaj thrusted his genitals against Mr. Compton. All acts were unwanted and unwelcome.

12. Mr. Compton complained to Mr. Bhardwaj and Mr. Bhardwaj's direct supervisor, Ms. Sarah Jennifer Williams ("Ms. Williams"). Mr. Bhardwaj ignored and/or laughed at Mr. Compton's complaints. Ms. Williams did nothing to control or discipline Mr. Bhardwaj's behavior and the sexual acts continued.

13. All of the above sexual acts occurred when Mr. Bhardwaj was a direct supervisor of the Plaintiff.

14. Upon information and belief, Mr. Bhardwaj had a prior history of perpetrating similar sexual acts against MDTA employees. The MDTA knew or had reason to know that Mr.

Bhardwaj engaged in a history of such sexual acts against other employees and that he had a history of polluting the MDTA workplace with a hostile work environment.

15. That Mr. Compton continued to protest such sexual acts of Mr. Bhardwaj, indicating that he was the victim of employment civil rights violations and that Mr. Bhardwaj committed acts of sexual harassment. No action was taken by the MDTA to discipline or remove Mr. Bhardwaj from his position and the sexual harassment continued.

16. That Mr. Compton finally filed a complaint with the MDTA "internally" on or about March 30, 2017 ("MDTA internal complaint"). As a result of same, the MDTA conducted an investigation into Mr. Compton's allegations against Mr. Bhardwaj ("MDTA investigation").

17. Following the said MDTA investigation, the MDTA fired Mr. Bhardwaj based on his repugnant sexual acts against Mr. Compton. The MDTA determined there was overwhelming evidence that Mr. Compton's allegations were true.

18. There is no dispute, and can be no dispute, based on the MDTA's own investigation, that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

19. There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to Mr. Compton for the acts of Mr. Bhardwaj.

20. Upon information and belief, the MDTA also administered disciplinary action against Ms. Williams for not taking sufficient remedial acts to control and discipline Mr. Bhardwaj. Ms. Williams was not discharged but separated from employment with the MDTA shortly after the incidents of this case came to light ("separation").

**RETALIATION**

4

21.    Prior to Ms. Williams' said separation from the MDTA, and while the said MDTA internal investigation was ongoing and the facts of this case were coming to light, Ms. Williams unlawfully retaliated against Mr. Compton for his having pursued a sexual harassment complaint against Mr. Bhardwaj.

22.    Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

23.    Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

24.    Mr. Compton had an extensive history of exemplary employment with the MDTA over many years of service. Before he complained he was the victim of sexual harassment, Mr. Compton had never been disciplined, was never written up, nor accused that he committed a work place rule violation. Mr. Compton enjoyed a stellar work history and had always planned to retire from the MDTA.

25.    Ms. Williams perpetrated false statements about Mr. Compton's performance. Ms. Williams fraudulently alleged that Mr. Compton was responsible for a "cash shortage."

26.    Instead of apologizing to Mr. Compton for her own poor management and otherwise failing to control and discipline Mr. Bhardwaj for his sexual predatory acts against Mr. Compton, Ms. Williams retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a cash shortage is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation, jeopardize his employment with the MDTA and retaliate against him.

## TANGIBLE EMPLOYMENT ACTION

27.   The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so physically and emotionally tortured, that he suffered a mental break down, was unable to function mentally as he normally did, unable to work, and unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

28.   The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman on or about June 8, 2017.

29.   According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and "...*it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job...*"

30.   It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider, to fairly evaluate Mr. Compton's fitness to return to work.

31.   Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and was forced to undergo medical leave.

32.   The MDTA discharged Mr. Compton while Mr. Compton was on said medical leave.

## CAUSES OF ACTION

## Count One

### *Violation of Maryland's SGA Title 20*
### *(Sexual Hostile Environment)*

33.   That Plaintiff reincorporates Paragraphs 1-32, as if fully set forth herein.

34.   That the Plaintiff was at all relevant times a full time employee of the Defendant Maryland MDTA and qualifies for relief as pursuant to Maryland's State Government Article Title 20 on Human Relations (hereinafter "SGA"), which Maryland state civil rights and remedies mirror rights and remedies pursuant to its federal counterpart "Title VII."

35.   That the above paragraphs 1 through 32, which are incorporated herein as if fully set forth herein, constitute sex and/or gender discrimination and the creation of a sexual hostile environment in violation of Maryland's SGA Title 20, and the specified acts against him were severe and/or pervasive and otherwise interfered with his ability to perform.

36.   That Plaintiff complained of said unlawful, unwanted and unwelcomed acts against him, but obtained no relief.

37.   That all of the above acts constitute a continuing violation of Plaintiff's rights to be free from sexual discrimination, harassment and/or hostile work environment under Maryland law.

38.   The sexual harassment involved extremely offensive conduct which was both severe and pervasive and created a hostile work environment that a reasonable person would consider intimidating, hostile and abusive.

39.   That Plaintiff was singled out from virtually all other employees. Plaintiff was repeatedly subjected to physical and mental abuse by a direct supervisor.

40.   The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

41.   That said unlawful acts were intolerable under reasonably objective and subjective standards.

42.   That the Defendants' conduct resulted in Plaintiff's wrongful discharge, and consequently inflicted economic and other harm on Plaintiff's well-being.

43.   That Plaintiff suffered damages to his reputation, was caused to change employment, and suffered humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him for which he is entitled a remedy under Maryland SGA Title 20.

## Count Two

### *Violation of Maryland's SGA Title 20*
### *(Retaliation)*

44.   That Plaintiff reincorporates Paragraphs 1-43, as if fully set forth herein.

45.   That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to Maryland's SGA Title 20.

46.   That the Defendant engaged in acts of retaliation against the Plaintiff which resulted in loss of employment, loss of equal employment opportunities, loss of training and loss of promotion.

47.   There is no dispute, and can be no dispute, based on the MDTA's own "investigation," that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

48.   There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to

Mr. Compton for the acts of Mr. Bhardwaj, as Mr. Bhardwaj was Mr. Compton's direct supervisor.

49.   Mr. Bhardwaj was fired based on his acts of sexual harassment against the Plaintiff.

50.   Ms. Williams did not take action to control and discipline Mr. Bhardwaj.

51.   Ms. Williams separated from employment with the MDTA after the incidents of this case

52.   Prior to such separation from employment with the MDTA, Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

53.   Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

54.   Mr. Compton has an extensive history of exemplary employment with the MDTA over many years of service. Before he complained he was the victim of sexual harassment, Mr. Compton had never been disciplined, never written up, nor committed a work place rule violation. Before he was the victim of sexual harassment, Mr. Compton enjoyed a stellar work history and planned to retire from the MDTA.

55.   Mr. Compton was attacked by Ms. Williams with false statements about his performance. Ms. Williams perpetrated fraudulent statements about Mr. Compton's performance, alleging Mr. Compton was responsible for a cash shortage.

56.   Ms. Williams attacked and retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a "cash shortage" is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation and employment with the MDTA.

57.   The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so physically and emotionally tortured, that he suffered a mental break down and was unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

58.   The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman.

59.   According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and "...*it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job...*"

60.   It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider to fairly evaluate Mr. Compton's fitness to return to work.

61.   Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and forced to undergo medical leave.

62.   The MDTA discharged the Mr. Compton while Mr. Compton was on said medical leave.

63.   The Plaintiff was forced to seek medical leave based on the MDTA's acts of sexual harassment and retaliation.

64.   That the Defendants retaliated against the Plaintiff for protesting civil rights violations as an employee of the Defendant MDTA and voicing his concerns that he was the victim of discrimination.

65.   That the above facts have been timely filed and investigated by the Federal Equal Employment Opportunity Commission over a period of several years under Charge Number 531-2017-01488. Investigators at the EEOC spoke with persons directly involved with the facts of this case and received correspondence from attorneys hired by the Defendants to answer the charge filed by the Plaintiff.

66.   The EEOC issued the Plaintiff a notice of suit rights. Please see the attached. Plaintiff exhausted all administrative remedies with the EEOC prior to filing this suit and has the right to file this case before this Honorable Court.

67.   That the Defendants wrongfully discharged the Plaintiff in retaliation for his protestations of being subjected to unlawful violations of employment civil rights.

68.   That the Defendants' acts of retaliation violate Maryland law as pursuant to Maryland's SGA Title 20.

69.   The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

70.   That the Defendants' conduct resulted in Plaintiff's wrongful discharge and consequently inflicted long term economic damages on the Plaintiff's well-being.

71.   That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, and suffered other loss for which he is entitled a remedy under Maryland's SGA Title 20.

### Count Three

### *Violation of Title VII*
### *(Sexual Hostile Environment)*

72.   That Plaintiff reincorporates Paragraphs 1-71, as if fully set forth herein.

73.   That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to *Title VII of the Civil Rights Act of 1964, et. seq., as amended ("Title VII")*.

74.   That the above paragraphs 1 through 71, which are incorporated herein as if fully set forth herein, constitute sex and/or gender discrimination and sexual hostile environment in violation of *Title VII*, and the specified acts against him were severe and/or pervasive and otherwise interfered with his ability to perform.

75.   That Plaintiff complained of said unlawful, unwanted and unwelcomed acts against him, but obtained no relief.

76.   That all of the above acts constitute a continuing violation of Plaintiff's rights to be free from sexual discrimination, harassment and/or hostile work environment under Maryland law.

77.   The sexual harassment involved extremely offensive conduct which was both severe and pervasive and created a hostile work environment that a reasonable person would consider intimidating, hostile and abusive.

78.   That Plaintiff was singled out from virtually all other employees. Plaintiff was repeatedly subjected to physical and mental abuse by a direct supervisor.

79.   The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

80.   That said unlawful acts were intolerable under reasonably objective and subjective standards.

81.   That the Defendants' conduct resulted in Plaintiff's wrongful discharge, and consequently inflicted economic and other harm on Plaintiff's well-being.

82.   That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him for which he is entitled a remedy under *Title VII.*

**Count Four**

*Violation of Title VII*

*(Retaliation)*

83.   That Plaintiff reincorporates Paragraphs 1-82, as if fully set forth herein.

84.   That the Plaintiff was at all relevant times a full time employee of the Defendant MDTA and therefore qualifies for relief as pursuant to *Title VII.*

85.   That the Defendant engaged in acts of retaliation against the Plaintiff which resulted in loss of employment, loss of equal employment opportunities, loss of training and loss of promotion.

86. There is no dispute, and can be no dispute, based on the MDTA's own "investigation," that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee.

87. There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times, and accordingly, the MDTA is vicariously liable to Mr. Compton for the acts of Mr. Bhardwaj, as Mr. Bhardwaj was Mr. Compton's direct supervisor.

88. Mr. Bhardwaj was fired based on his acts of sexual harassment against the Plaintiff.

89. Ms. Williams did not take action to control and discipline Mr. Bhardwaj.

90. Ms. Williams separated from employment with the MDTA after the incidents of this case

91. Prior to such separation from employment with the MDTA, Ms. Williams launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA.

92. Ms. Williams created the illusion that Mr. Compton performed poorly at his position and that he was responsible for a cash shortage.

93. Mr. Compton filed an EEO complaint with the MDTA "internally" on March 30, 2017. As a result of same, the MDTA conducted an investigation into Mr. Compton's allegations against Mr. Bhardwaj.

94. Ms. Sara Cabrera, Chief of the MDTA's Equal Employment Opportunity and Fair Practices Department, was in charge of that investigation. Her investigation included a thorough review of Mr. Compton's complaint, and information obtained through interviews with employees of the MDTA.

95.  That during the week of April 17, 2017, Ms. Jennifer Williams, Mr. Bardwaj's supervisor, approached the Plaintiff and expressed anger towards Plaintiff for going outside her department to report Mr. Bardwaj's behavior to MDTA management. Ms. Williams berated Plaintiff telling him that Plaintiff's internal complaint insinuated that she lost control of her department.

96.  Plaintiff felt intimidated by Ms. Williams and became ill both mentally and physically.

97.  On April 21, 2017, Ms. Sara Cabrera, Chief of the Defendant MDTA's Equal Employment Opportunity and Fair Practices Department, stated as follows in her letter to Plaintiff: "I have conducted an internal investigation into this matter. The investigation included a thorough review of your complaint, and information obtained through interviews. Based on this investigation, there was sufficient evidence to support your complaint as alleged."

98.  There is no dispute, and can be no dispute, based on the MDTA's own investigation, that Mr. Compton was the unfortunate victim of sexual harassment as an MDTA employee. There is no dispute, and can be no dispute, that Mr. Bhardwaj was the direct supervisor of Mr. Compton at all relevant times. There is also no dispute that Ms. Williams was the supervisor at all relevant times of Mr. Bhardwaj, and that based on Ms. Williams' acts and/or failure to act, Mr. Bhardwaj committed acts of sexual harassment and Ms. Williams's acts enabled Mr. Bhardwaj to continue undisciplined and uncontrolled unlawful acts against Mr. Compton. Mr. Bhardwaj has a history of sexually harassing employees which predated the events in this case.

99.  Ms. Williams' anger which was directed at Mr. Compton was expressed throughout her subsequent communications and continuously after the MDTA investigation findings

were published. Ms. Williams was noticeably angry with Mr. Compton and did not speak

to him professionally and/or the same way she did before he filed the internal complaint

of March 30, 2017.

100.   That in the wake of the findings of the MDTA investigation which validated Mr.

Compton's charge of sexual harassment, Ms. Williams began a deliberate and maligned

campaign against the Plaintiff in retaliation for having brought the Bardwaj matter to

MDTA management. She unleashed a flurry of fabricated and fraudulent "disciplinary"

reports and warnings intended to besmirch the Plaintiff's work history, and otherwise get

him fired as soon as she could.

101.   Mr. Compton was out of the office and ill due to stress and anxiety from April 24 through

April 26, 2017.

102.   On April 27, 2017, Ms. Williams wrote the Plaintiff up as part of a "written reprimand"

for an incident that allegedly occurred more than four (4) weeks earlier on March 26,

2017. On April 27, 2017 it was alleged by Ms. Williams that Mr. Compton did not report

to a manager that there was a short of $10.00 (ten dollars), and that this "careless

mishandling of MDTA revenues may lead to more severe disciplinary action, up to and

including charges for termination." The truth was that the $10.00 short was detected by

Mr. Compton and brought to the attention of his manager – Mr. Bhardwaj. Mr. Bhardwaj

advised Mr. Compton that he [Bhardwaj] would take care of the alleged discrepancy and

no further action was necessary by Mr. Compton. Ms. Williams knew this [that Mr.

Bhardwaj was responsible for taking care of the said $10.00 discrepancy and notified of

same], and this was no issue whatsoever. However, after the MDTA EEOC Chief issued

her findings on April 21, 2017, Ms. Williams reached back four weeks, ignored what occurred in the interim and slandered Mr. Compton on April 27, 2017.

103. On the same day, April 27, 2017, Ms. Williams asserted that a customer "wrote a letter" about Mr. Compton which asserted that he was impolite to a customer. Ms. Williams stated to Mr. Compton that she was "writing him up" and that his acts towards the customer could result in his termination. Mr. Compton denied that he behaved in any manner that was not professional and asked to see the letter which Ms. Williams alleged the "customer" wrote about his behavior. Ms. Williams refused to present the letter to him. No letter exists. Mr. Compton at no time was impolite to a customer of the MDTA. This act by Ms. Williamss against Mr. Compton was another act of retaliation for his filing a charge that he was the victim of sexual harassment.

104. Two days later, April 29, 2017, Ms. Williams again retaliated against Mr. Compton. Ms. Williams asserted the false statement that Mr. Compton made a "threatening statement" and that such statement was an act of "workplace violence." There is no truth whatsoever that Mr. Compton uttered a threatening statement or committed an act of workplace violence toward anyone at any time. On the day in which Ms. Williams claims the Plaintiff made such threatening statement, Mr. Compton was not at work. Ms. Williams claims Mr. Compton made a threatening statement on April 26, 2017. Mr. Compton was at home resting on April 26, 2017 because he was suffering from stress and anxiety caused by Ms. Williams and Mr. Bhardwaj. Ms. Williams also claimed Mr. Compton made a similar statement on April 27, 2017 in the presence MDTA employee Stephanie Melchor. Stephanie Melchor was contacted about this and asserted that no such statement was uttered by Mr. Compton.

105.   Mr. Compton has a physician note which confirms he was excused from work on April 26, 2017 and was not working on the date Ms. Williams lied and stated that he committed an act of workplace violence. Mr. Compton at no time ever made a threatening statement.

106.   Ms. Williams' fraudulent statement that Mr. Compton made a threatening statement and committed an act of workplace violence was solely and completely an act of retaliation against Mr. Compton for filing a claim that he was the victim of sexual harassment as an MDTA employee – which the MDTA independently verified was credible and supported from the MDTA's findings.

107.   Next, only two days later on May 1, 2017, Mr. Compton was subjected to another act of retaliation. Ms. Williams created the story that "Mr. Compton mishandled MDTA funds." This assertion is a false statement of fact.

108.   During the ordinary course of business, MDTA employee Sherri Lapin came to the MDTA "money room" to exchange approximately three thousand and nine hundred dollars from larger bills to smaller bills. Both Mr. Compton and Ms. Amber Criner participated with this transaction. Once the bills were broken down to smaller denominations, the money was recounted and a bank deposit created. Ms. Lapin then left with the money after the money was counted by all. A short time later, Ms. Criner and Mr. Compton noticed they had an overage of five hundred dollars. They immediately called Ms. Lapin and asked her to recount the money she left with and was to deposit. Ms. Lapin realized she was $500 short. Mr. Compton and Ms. Criner promptly gave her the $500 overage. Ms. Lapin mistakenly did not collect all bills for deposit initially and this counting error was promptly corrected. No one should have been disciplined–this

inadvertent error occasionally occurs in the ordinary course of operations and all money was properly accounted for.

109.   It was revealed later that the two co-workers who allegedly committed the same "error" as Mr. Compton were treated differently. Ms. Lapin received no penalty and charged no loss of compensable leave time whatsoever. Ms. Criner received one (1) day of lost compensable leave time. Mr. Compton on the other hand was punished with three (3) days of lost compensable leave time. There can be no dispute Mr. Compton was treated worse than the two similarly situated employees who committed the same alleged "error." However, the similarly situated employees – Lapin and Criner – were not the victim of sexual harassment and did not file a charge of sexual harassment against the Defendant MDTA.

110.   That prior to filing a charge of discrimination and sexual harassment on March 30, 2017, over a period of nine years, Mr. Compton was never disciplined and had never been "written up." Over those nine years Mr. Compton was promoted and offered raises in pay.

111.   After Mr. Compton filed a charge of sexual harassment on March 30, 2017, which charge was validated and supported by evidence based on the independent investigation of the MDTA, which concluded with a written statement issued by the MDTA on April 21, 2017, Mr. Compton was immediately and repeatedly attacked with false and misleading statements and treated far worse than similarly situated employees who did not pursue civil rights violations. Mr. Compton was written up twice on April 27, 2017, he was written up again on April 29, 2017 and then again on May 1, 2017.

112.   As a result of the above acts, Mr. Compton fell into a deep state of despair, anxiety, depression and suffered a mental breakdown. He physically and mentally could not return to work for the MDTA.

113.   Mr. Compton was falsely accused of being unprofessional to a customer, Mr. Compton was falsely accused of committing an act of workplace violence on a day he wasn't at work. Mr. Compton was fraudulently labeled a thief throughout his department, and it was stated that Mr. Compton couldn't be trusted and "mishandled money," all of which are slanderous and blatantly false statements. These retaliatory acts against Mr. Compton, and many other acts of the Defendant MDTA, were perpetrated against Mr. Compton in retaliation for his having filed a charge of sexual harassment – after the MDTA management determined from its own investigation his charge was accurate and credible. Moreover, Ms. Williams expressed anger and contempt towards Mr. Compton in retaliation for his having engaged in protected acts of filing and participating with a charge of discrimination and sexual harassment which violate Title VII.

114.   Mr. Compton was attacked by Ms. Williams with false statements about his performance. Ms. Williams perpetrated fraudulent statements about Mr. Compton's performance alleging Mr. Compton was responsible for a cash shortage.

115.   Ms. Williams attacked and retaliated against Mr. Compton with false statements. Each and every statement that Mr. Compton was somehow responsible for a "cash shortage" is a false statement manufactured by Ms. Williams to smear Mr. Compton's reputation and employment with the MDTA.

116.   The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Compton and Mr. Compton became very ill. Mr. Compton was so

physically and emotionally tortured, that he suffered a mental break down and was unable to return to his position with the MDTA. This is the essence of a "tangible employment action."

117. The MDTA ordered that Mr. Compton be evaluated by its psychiatric health expert, Dr. Gabriel Newman, to assess his mental health and determine whether he was fit to continue working for the MDTA. Mr. Compton complied with the MDTA's request and was examined by Dr. Newman.

118. According to Dr. Newman, Mr. Compton was so emotionally disturbed from the acts of Mr. Bhardwaj and Ms. Williams that Mr. Compton was recommended by Dr. Newman, the MDTA's psychiatrist, not to return to his position. Dr. Newman wrote that Mr. Compton's injuries were supported from his assessment and *"...it would not be possible for Mr. Compton to return to work in his current circumstances and for him to perform adequately, a fact that he acknowledges even while expressing great fear about the loss of income or loss of his job..."*

119. It should be considered that the MDTA referred Mr. Compton to Dr. Newman for psychiatric evaluation and analysis and that Dr. Newman is the MDTA's selected health care provider to fairly evaluate Mr. Compton's fitness to return to work.

120. Due to the posttraumatic stress and other psychiatric injuries, Mr. Compton was unable to return to his position with the MDTA and forced to undergo medical leave, which leave was recommended by the MDTA's neuropsychologist who examined him.

121. On May 8, 2017, Plaintiff filed a charge of discrimination with the United States Federal Equal Employment Opportunity Commission.

122. After Mr. Compton underwent a period of therapy and after he was mentally and physically able to return to his position, the Defendant did not permit Mr. Compton to return to his position. On June 30, 2017, the MDTA offered Mr. Compton one of three choices: (1) Mr. Compton could return to work in the capacity of "facility maintenance" which was a demotion in work responsibilities and reduction in paygrade, (2) apply for retirement or (3) resign.

123. That the Defendants retaliated against the Plaintiff for protesting civil rights violations as an employee of the Defendant MDTA and voicing his concerns that he was the victim of discrimination. As noted above, the Plaintiff suffered tangible loss, economic loss and was involuntarily and/or constructively discharged from his employment when he refused to return to work in the capacity of facility maintenance.

124. That the above facts have been timely filed and investigated by the Federal Equal Employment Opportunity Commission over a period of several years under Charge Number 531-2017-01488. Investigators at the EEOC spoke with persons directly involved with the facts of this case and received correspondence from attorneys hired by the Defendant to answer the charge filed by the Plaintiff.

125. The EEOC issued the Plaintiff a notice of suit rights. Please see the attached. Plaintiff exhausted all administrative remedies with the EEOC prior to filing this suit and has the right to file this case before this Honorable Court.

126. That the Defendant MDTA wrongfully discharged, involuntarily and/or constructively discharged the Plaintiff in retaliation for his protestations of being subjected to unlawful violations of employment civil rights.

127. That the Defendant MDTA's acts of retaliation violate *Title VII*.

128. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

129. That the Defendant MDTA's conduct resulted in Plaintiff's wrongful discharge and consequently inflicted economic damages on the Plaintiff's well-being.

130. That Plaintiff was left without employment, deprived of economic wages, suffered losses in back pay and front pay, suffered damages to his reputation, was caused to change employment, suffered wage loss and other economic and financial loss for which he is entitled a remedy under *Title VII*.

131. That the Defendants' acts wrongfully discharged the Plaintiff in violation of *Title VII*.

132. That the Defendants' conduct inflicted long term economic damages on the Plaintiff's well-being.

133. That Plaintiff was left without employment, suffered damages to his reputation, standing, was caused to change employment, suffered pain and suffering, humiliation and embarrassment and other emotional and physical pain and suffering inflicted upon him for which he is entitled a remedy under *Title VII*.

134. That the Plaintiff's employment records and history with the Defendants was forever altered.

<u>**Count Five**</u>
*(Battery)*
*Against Defendant Bhardwaj*

135. That Plaintiff reincorporates Paragraphs 1-134, as if fully set forth herein.

136. That the Defendant Bhardwaj engaged in acts which included unlawful attempts to cause harmful and offensive contact with the Plaintiff and/or caused an apprehension of such contact.

137.    That the Defendant Bhardwaj engaged in acts which included intentional and unlawful threats, by words and/or acts, which physically harmed the Plaintiff.

138.    That the Plaintiff believed that the Defendant Bhardwaj at all relevant times had the ability to carry out such threats.

139.    That the Plaintiff was placed in reasonable fear of imminent harm as a result of the Defendant Bhardwaj's acts.

140.    That offensive and intentional contact and/or touching occurred, which caused the Plaintiff's physical and emotional pain, injury and illness.

141.    That the offensive contact and/or touching occurred and offended the Plaintiff's reasonable sense of personal dignity.

142.    That the Plaintiff at no time consented to the above said acts perpetrated by the Defendant Bhardwaj.

143.    That the said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, physical and emotional distress, and mental anguish.

144.    That the Plaintiff was damaged by the acts of the Defendant Bhardwaj.

### Count Six

#### (Intentional Infliction of Emotional Distress)
#### Against all Defendants

145.    That Plaintiff reincorporates Paragraphs 1-144, as if fully set forth herein.

146.    That the Defendants' conduct was intentional and reckless.

147.    That the Defendants' conduct was extreme and outrageous.

148.    That the Defendants' conduct caused emotional distress to the Plaintiff.

149.    That the Plaintiff's emotional distress was severe.

150.   The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to severe humiliation, physical and emotional distress, and mental anguish.

151.   That the Plaintiff was damaged by the acts of the Defendants.

## RELIEF REQUESTED

As to Counts One through Six, the Plaintiff Dakota Compton respectfully requests that this Honorable Court:

a.   DECLARE that the conduct complained of by Plaintiff against the Defendants is in violation of the law;

b.   PERMANENTLY ENJOIN the Defendants from engaging in all practices found by this Court to be in violation of the law;

c.   AWARD Plaintiff compensatory damages, damages for emotional and physical pain and suffering, damages to his reputation, standing and employment history, economic damages including back and/or front pay, liquidated damages, punitive damages where permitted by law, and attorneys' fees and costs for this litigation where permitted by law, in the total amount of Five Hundred Thousand Dollars ($500,000.00), *jointly and severally*, against the Defendant State of Maryland, the Defendant Maryland Transportation Authority (MDTA) and the Defendant Satish Bhardwaj; and

d.   GRANT such other and further relief to Plaintiff as the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby prays for and requests a trial by jury.

Respectfully submitted,

Mark R. Millstein, Esquire
Fed Bar No. 14440
Courtside Professional Building
110 East Lexington Street, Suite 300
Baltimore, Maryland 21202
Tel: (410) 752-5920
Fax: (410) 752-7676
Mark@MillsteinLegal.Com

David M. Silbiger, Esquire
Fed Bar No. 08777
Courtside Professional Building
110 East Lexington Street, Suite 100
Baltimore, Maryland 21202
Tel: (410) 685-1616
Fax: (410) 685-4998
DSilbiger@Silbigerlawoffices.com

**Attorneys for the Plaintiff**
**Dakota Compton**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March, 2019, a copy of the foregoing documents were served upon the following via courts ECF e-mail delivery system and/or United States mail postage prepaid:

Christy Fisher, Esq.
Megan E. Mohan, Esq.
Assistant Attorneys General
Office of the Attorney General
Maryland Transportation Authority
2310 Broening Highway
Baltimore, MD 21224

Satish Bhardwaj
8573 Stevenswood Road
Baltimore, MD 21244

_____
Mark R. Millstein, Esq.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Dakota Compton<br>4 Oak Grove Avenue<br>Baltimore, MD 21228 | From: Baltimore Field Office<br>G.H. Fallon Federal Building<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD 21201 |
|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 531-2017-01488 | Phillip Hoefs,<br>Investigator | (410) 209-2728 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Rosemarie Rhodes,
Director

SEP 25 20__ (Date Mailed)

Enclosures(s)

cc: Denise Green
EEO Lead Officer
Maryland Transportation Authority
2310 Broening Highway
Baltimore, MD 21224

Mark Millstein, Esq.
MILLSTEIN LAW OFFICES
110 East Lexington Street, Suite 300
Baltimore, MD 21202