IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAKOTA COMPTON,
 *Plaintiff*,

v.             Civil No.: ELH-19-804

STATE OF MARYLAND, *et al.*,
 *Defendants.*

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Dakota Compton filed suit against the State of Maryland and the Maryland Transportation Authority (collectively, the "State" or the "MDTA"), and MDTA's former employee, Satish Bhardwaj.[1] ECF 8-1 (the "First Amended Complaint"). Plaintiff asserts that from August 1, 2016 to March 30, 2017, his immediate supervisor, Bhardwaj, sexually harassed him. The claim was substantiated, and Bhardwaj was terminated. Further, plaintiff alleges that he was subjected to retaliation from Bhardwaj's supervisor, Sarah Williams, who was disciplined but not discharged. According to plaintiff, the retaliation culminated in his termination while he was on medical leave. Plaintiff seeks declaratory and injunctive relief as well as monetary damages.

The Complaint contains six counts. Count One alleges "Sexual Hostile Environment," in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2017 Supp.), § 20–606 of the State Government Article ("S.G."). Count Two alleges "Retaliation" under the MFEPA. In Count Three, plaintiff alleges "Sexual Hostile Environment,"

---

[1] Suit was filed in the Circuit Court for Baltimore City on December 12, 2018. ECF 1-2. The State removed the case to this Court on March 15, 2019 (ECF 1), based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331 and 1441.

in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Count Four asserts a retaliation claim under Title VII. Count Five, lodged only against Bhardwaj, asserts a common law claim of battery. Finally, Count Six sets forth a claim for intentional infliction of emotional distress.

The State has filed a "Partial Answer." ECF 16. And, it has filed a "Partial Motion To Dismiss" (ECF 15), with respect to Counts Two, Four, and Six of the First Amended Complaint. The motion is supported by a memorandum. ECF 15-1 (collectively, "State Motion"). Compton opposes the State Motion, in part. ECF 19. The State has replied. ECF 21. Bhardwaj has also moved to dismiss (ECF 26), supported by a memorandum (ECF 26-1) (collectively, "Bhardwaj Motion"). Plaintiff has responded. ECF 27. No reply was filed, and the time to do so has expired. *See* Local rule 105.2.

No hearing is necessary to resolve the motions. Local Rule 105.6. For the reasons that follow, I shall grant the Bhardwaj Motion and I shall grant in part and deny in part the State Motion.

## I. FACTUAL BACKGROUND

Plaintiff began working for the MDTA in August 2010. ECF 8-1, ¶ 6. He was hired as a Facility Maintenance Technician and was later promoted to a Customer and Revenue Agent. *Id.* Compton alleges that he "met and exceeded all reasonably objective performance standards," leading him to "receive[] increases in pay several times." *Id.* ¶ 7.

Plaintiff reported to Bhardwaj. *Id.* ¶ 8. Compton avers that from August 1, 2016, to March 30, 2017, he "was subjected to unwelcome and unwanted lewd sexual acts perpetrated" by Bhardwaj, including "derogatory and extremely vulgar and abusive language, pornographic material, [and] sexual comments about Mr. Compton's relationship with his significant other[.]"

2

*Id.* ¶ 9. Further, Bhardwaj also allegedly made unwanted advances towards plaintiff, and at one point "thrust[] his genitals against Mr. Compton." *Id.* ¶ 11.

Plaintiff repeatedly asking Bhardwaj to stop his offensive conduct, but Bhardwaj ignored his requests or laughed at him. *Id.* ¶¶ 10, 12. In plaintiff's view, "Bhardwaj appeared to take pleasure in humiliating [him] and making [him] uncomfortable with such sexual acts." *Id.* ¶ 10. Plaintiff complained to Bhardwaj's supervisor, Sarah Williams, but that too proved unavailing. *Id.* ¶ 12.

Compton filed a complaint with the MDTA on or about March 30, 2017. *Id.* ¶ 16. While the investigation was ongoing, Williams allegedly "launched a personal campaign to smear Mr. Compton's work record, standing and reputation at the MDTA." *Id.* ¶ 22. And, during the week of April 17, 2017, Williams allegedly "approached and expressed anger towards Plaintiff for going outside her department to report Mr. Bardwaj's [sic] behavior to MTDA management." *Id.* ¶ 95.

On April 21, 2017, Sara Cabrera, Chief of the MTDA's Equal Employment Opportunity and Fair Practices Department, wrote to plaintiff, stating: "'I have conducted an internal investigation into this matter. The investigation included a thorough review of your complaint, and information obtained through interviews. Based on this investigation, there was sufficient evidence to support your complaint as alleged.'" *Id.* ¶ 97. Thereafter, the MDTA "fired" Bhardwaj. *Id.* ¶ 17. Williams was not discharged, but plaintiff alleges that the MDTA disciplined her for failing to take measures to control Bhardwaj. *Id.* ¶ 20.

Compton alleges that, as a result of Williams's actions, he "was so physically and emotionally tortured, that he suffered a mental break down, was unable to function mentally as he normally did, unable to work, and unable to return to his position with the MDTA." *Id.* ¶ 27; *see also id.* ¶¶ 112, 116. Plaintiff was "forced to undergo medical leave." *Id.* ¶ 31.

3

According to plaintiff, following the MDTA investigation, Williams renewed "a deliberate and maligned campaign against the Plaintiff in retaliation for having brought the Bardwaj [sic] matter to MDTA management." *Id.* ¶ 100. Specifically, plaintiff alleges that on April 27, 2017, while he was out on sick leave, Williams issued a written reprimand to plaintiff for mishandling MDTA funds during a transaction that occurred four weeks prior. *Id.* ¶ 102. The same day, Williams also asserted that a customer wrote a letter complaining that plaintiff had acted in an impolite manner. *Id.* ¶ 103. And, two days later, Williams accused plaintiff of making a "'threatening statement'" while at work on April 26, 2017, which plaintiff alleges was impossible because he was on sick leave that day. *Id.* ¶ 104.

Further, plaintiff alleges that on May 1, 2017, Williams "created the story that 'Mr. Compton mishandled MDTA funds.'" *Id.* ¶ 107. In particular, Williams claimed that plaintiff and Amber Criner and Sherri Lapin, both MDTA employees, made miscalculations during a money exchange, resulting in a $500 accounting error. *Id.* ¶ 108. Although Ms. Lapin was not penalized and Ms. Criner was docked one day of compensable leave time, plaintiff was docked three days of compensable leave time. *Id.* ¶ 109.

The MDTA required plaintiff to submit to a psychiatric evaluation "to assess his mental health and determine whether he was fit to continue working for the MDTA." *Id.* ¶ 28. Therefore, plaintiff underwent an examination on June 8, 2017, performed by Gabriel Newman, M.D. *Id.* According to plaintiff, Dr. Newman "recommended" that plaintiff not return to his position, in light of his "current circumstances." *Id.* ¶ 29.

Plaintiff sought to return to work on June 30, 2017, after he underwent therapy and believed he was mentally able to do so. *Id.* ¶ 122. But, the MDTA "did not permit" him to return to his position. *Id.* According to plaintiff, the MDTA gave him three choices: "(1) Mr. Compton could

4

return to work in the capacity of 'facility maintenance,' which was a demotion in work responsibilities and reduction in pay grade, (2) apply for retirement, or (3) resign." *Id.* ¶ 122. In plaintiff's view, the MDTA effectively discharged him while he was on medical leave. *Id.* ¶ 32.

Additional facts are included in the Discussion.

## II. STANDARD OF REVIEW

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations"

5

in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

A court "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*,

791 F.3d at 508; *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 6367 F.3d 462, 466 (4th Cir.), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the nonmovant. *Clatterbuck*, 708 F.3d at 557.

### III. DISCUSSION

#### A. Bhardwaj Motion

Bhardwaj moves to dismiss the First Amended Complaint on the ground that plaintiff failed to effect service of process, as required by Fed. R. Civ. P. 4. ECF 26-1 at 4-5. Further, he contends that he is immune from suit. *Id.* at 6-9. And, he argues that plaintiff has failed adequately to allege plausible claims under Title VII, the MFEPA, or Maryland common law. *Id.* at 10-25.

Plaintiff does not challenge these arguments. Instead, Compton states that he does "not oppose this Honorable Court dismissing [his] claims against Defendant Satish Bhardwaj only, with respect to the claims asserted by the Plaintiff against Mr. Bhardwaj in his individual capacity." ECF 27 at 3.

Plaintiff's response implicates the important distinction between official capacity suits and individual capacity suits. The Supreme Court has explained that "[p]ersonal-capacity suits seek

8

to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In contrast, official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (citation omitted); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Huggins v. Prince George's Cty.*, 683 F.3d 525, 532 (4th Cir. 2012); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). The *Graham* Court also said, 473 U.S. at 166: "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (Emphasis in *Graham*).

The Complaint does not specify whether plaintiff has sued Bhardwaj in his official capacity, individual capacity, or both. ECF 8-1. To the extent that plaintiff lodges Counts One through Four and Count Six against Bhardwaj in his official capacity, those claims are redundant because a suit against Bhardwaj in his official capacity is tantamount to a suit against the MDTA, which is named as a defendant in those counts. Therefore, I shall dismiss Counts One through Four and Count Six, to the extent that those claims are lodged against Bhardwaj in his official capacity. *See Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 484 (D. Md. 2016) (dismissing Title VII claims against officer sued in his official capacity, as it was "duplicative of the suit against the County"); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012) (dismissing Title VII official-capacity suit against officer because "such a claim would be wholly duplicative" and was "the practical equivalent of suing the [state] twice in the same action"); *Roberts v. Coffrey*,

DKC-10-3359, 2012 WL 2000353, at *3 (D. Md. June 4, 2012) (holding that Title VII claims against officers in their official capacity "would be redundant," and thus dismissing the claims).

With respect to plaintiff's suit against Bhardwaj in his individual capacity, plaintiff does not oppose the dismissal of the First Amended Complaint against Bhardwaj personally. ECF 27 at 3. Thus, I shall dismiss Counts One through Six to the extent that plaintiff seeks to sue Bhardwaj individually.

### B. State Motion

The State has moved to dismiss Counts Two, Four, and Six.[2] The State also asserts that "portions of Plaintiff's Complaint may be barred by the two-year statute of limitations" applicable to the MFEPA, S.G. § 20-1013(a)(3).

#### 1. Count Six: Intentional Infliction of Emotional Distress

As to Count Six, the claim for intentional infliction of emotional distress, the State contends that plaintiff failed to provide the requisite notice to the State, as required by the Maryland Tort Claims Act, S.G. § 12-101 *et seq.* In addition, the State argues that Count Six fails to state a claim.

In his Opposition (ECF 19), plaintiff expressly agrees to the dismissal of Count Six. Therefore, I need not address the State's contentions. I shall grant the State Motion as to Count Six.

#### 2. Counts Two and Four: Retaliation

The State argues that Compton fails to state a claim for retaliation under both Title VII and the MFEPA. ECF 15-1 at 8; ECF 21 at 2-6. The MFEPA is "the state analogue of Title VII."

---

[2] In a footnote in its Reply, the State avers that it is "not contesting the hostile work environment claims at this juncture[.]" ECF 21 at 2 n.1. However, later in the Reply, the State asks the Court to dismiss Count One, which alleges a claim of hostile work environment under the MFEPA. *Id.* at 6. Because the State provides no basis for doing so, I shall deny this request.

*Alexander v. Marriott Int'l, Inc.*, RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735, 743 n.8 (Md.2007)). Accordingly, courts evaluate discrimination and retaliation claims brought under MFEPA by the same standards as claims brought under Title VII. *See, e.g.*, *Lowman v. Md. Aviation Admin.*, JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019); *Churchill v. Prince George's Cty. Pub. Schs.*, PWG-17-980, 2017 WL 5970718, at *5 n.6 (D. Md. Dec. 1, 2017); *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496-97 (D. Md. 2013).

The State maintains that none of plaintiff's allegations rise to the level of an adverse employment action needed to support a claim of retaliation. ECF 15-1 at 8. Further, the State contends that the retaliation claim fails because plaintiff's own allegations establish that he left his position due to health issues, not because of Williams's conduct or wrongdoing on the part of the MDTA. *Id.* at 9; ECF 21 at 4. Thus, in the State's view, no causal nexus exists between plaintiff's protected activity and the alleged retaliation. *Id.* at 9.

Plaintiff disagrees. He contends that he pleaded a material adverse action by alleging that, when he sought to return from his medical leave, he was told he could either retire, resign, or accept a demotion. ECF 19 at 15. And, he insists that he has pleaded a causal link between the filing of his complaint and his demotion or discharge, because defendants' "acts of harassment and retaliation led to his deep state of despair, anxiety, depression and mental breakdown," *id.* at 18; this necessitated his taking a leave from work; and the MDTA "'**did not permit Mr. Compton to return to his position**.'" *Id.* at 19 (emphasis in original) (quoting ECF 8-1, ¶122).

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. It also bars

11

retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3; *see e.g.*, *Young v. United Parcel Serv., Inc.*, 575 U.S. ____, 135 S. Ct. 1338, 1344 (2015); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205-06 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

To state a claim of retaliation under Title VII, a plaintiff must allege "(1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." *Evans*, 936 F.3d at 195; *see Strothers*, 895 F.3d at 327; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

A plaintiff must first allege that he engaged in protected activity. The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937. "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airport Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

The second element is that of an "adverse action." In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case.

12

(Emphasis added.) In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Id.* In a retaliation claim, the standard for an adverse action is more expansive than for a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").

However, Title VII does not serve as "'a general civility code for the American workplace.'" *Id.* at 68 (citation omitted). Thus, it "does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Virginia State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019). Rather, to qualify as a materially adverse action in the retaliation context, the plaintiff must show that the act "'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. at 68 (citations omitted); *see Evans*, 936 F.3d at 195; *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). And, "there must be 'some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'" *Ray*, 909 F.3d at 670 (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)); *see Burlington Northern*, 548 U.S. at 67.

The Fourth Circuit has found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). The reassignment of job functions may also constitute an adverse action. *Young v. Montgomery Cty.*, PX-18-2054, 2019 WL 1596992, at *4 (D. Md. Apr. 15, 2019) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,

761-62 (1998)). But, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII." *Boone*, 178 F.3d at 256. At a minimum, the plaintiff must demonstrate that "the reassignment had some significant detrimental effect on" the employee. *Id*.

To allege the requisite causation under Title VII, the plaintiff must plead that the retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Irani v. Palmetto Health*, 767 F. App'x 399, 421 (4th Cir. 2019) (per curiam). In other words, Title VII requires the plaintiff to allege "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362. Ultimately, the plaintiff must establish retaliation, either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.- E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). Indeed, a lapse of two-and-a-half months between the protected activity and an adverse employment action "is sufficiently long so as to weaken significantly the inference of causation," although it does not preclude the plaintiff from stating causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

At this juncture, plaintiff has adequately alleged a plausible claim of retaliation under the MFEPA and Title VII. Plaintiff alleges that he filed an internal complaint with the MDTA on

14

March 30, 2017, concerning Bhardwaj's sexual harassment. ECF 8-1, ¶ 16. And, on May 8, 2017, plaintiff filed a charge of discrimination with the EEOC. *Id.* ¶121. These are indisputably protected activities under Title VII. 42 U.S.C. § 2000e-3(a); *see King*, 328 F.3d at 151 (plaintiff's "filing of the EEO Complaint was protected activity"). And, according to plaintiff, when he sought to return from medical leave on June 30, 2017, the MDTA put plaintiff to the Hobson's Choice of returning to work in a position with reduced job responsibilities and pay, applying for retirement, or resigning. ECF 8-1, ¶ 122. Therefore, plaintiff has plausibly alleged a materially adverse action. *See Burlington Northern*, 548 U.S. at 69; *Boone*, 178 F.3d at 256; *accord Stennis v. Bowie State Univ.*, 716 F. App'x 164, 168 (4th Cir. 2017) (reassignment of job duties was actionable when it harmed plaintiff's chances to advance professionally); *Mackey v. Shalala*, 43 F. Supp. 2d 559, 569 (D. Md. 1999) (reassignment to allegedly "career dead-end" position was an adverse action under Title VII's retaliation provision).

Thus, whether plaintiff has alleged a plausible claim of retaliation boils down to whether he has pleaded a causal connection between these two events. Pleading causation under Title VII's retaliation provision is not a heavy lift. *See Autrey v. Maryland*, GLR-14-3064, 2016 WL 362502, at *5 (D. Md. Jan. 29, 2016) (observing that "[l]ittle is required to plead causation" in the Title VII retaliation context) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998)). A causal relationship "exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogation on other grounds recognized by Foster*, 787 F.3d at 299.

To determine whether plaintiff has alleged such a causal nexus, courts examine: "(1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the

15

protected activity and the allegedly retaliatory act." *Lewis v. Balt. City Bd. of Sch. Comm'rs*, CCB-14-3363, 2016 WL 2939695, at *5 (D. Md. May 20, 2016). And, while temporal proximity between the protected activity and adverse action may sometimes be sufficient to satisfy the causality requirement at the pleading stage, where the temporal proximity is "'missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citation omitted); *accord Bowman v. Balt. City Bd. of Sch. Comm'rs*, RDB-15-01282, 2016 WL 1159259, at *6 (D. Md. Mar. 24, 2016).

The State concedes that "the temporal links pled by Plaintiff . . . connect Plaintiff's internal complaint to MDTA with actions by Ms. Williams." ECF 15-1 at 8. Nonetheless, the State asserts that plaintiff fails to allege that his protected activity was a but-for cause of his demotion. ECF 15 at 8. The State avers: "The First Amended Complaint fails to allege that Ms. Williams, or her actions, played a role in the eventual termination of plaintiff. Rather, the First Amended Complaint explicitly states that Plaintiff was 'unable to return to his position with the MDTA' due to 'posttraumatic stress and other psychiatric injuries.'" *Id.* (quoting ECF 8-1, ¶61). As the State sees it, plaintiff's mental condition and his refusal to return to work are to blame for his alleged demotion, not discriminatory animus on the part of the MDTA. *Id.*; *see also* ECF 21 at 5.

These arguments are unavailing. To state a claim of retaliation under Title VII, the plaintiff must plead "that the protected activity was a but-for cause of her termination, not that it was the sole cause." *Guessous v. Fairview Prop. Invest., LLC*, 828 F.3d 208, 218 (4th Cir. 2018) (citing *Foster*, 787 F.3d at 252); *see Nassar*, 570 U.S. at 362. Here, plaintiff alleges that Williams began to bombard him with accusations and reprimands after he filed an internal complaint on March 30, 2017. ECF 8-1, ¶ 57. Further, plaintiff connects Williams's conduct to his protected activity, pleading that in April 2017, she "expressed anger" towards plaintiff "for going outside her

16

department to report Mr. Bardwaj's [sic] behavior to MTDA management." *Id.* ¶ 95. Williams's actions toward plaintiff caused him to "suffer[] a mental break down." ECF 8-1, ¶ 57. As a result, the MDTA allegedly "ordered" plaintiff to undergo a psychiatric evaluation, which was conducted by Dr. Newman on June 8, 2017. *Id.* ¶ 28. And, Dr. Newman allegedly "recommended" that plaintiff not return to work. *Id.* ¶ 29. Moreover, according to plaintiff, on June 30, 2017, the MDTA "did not permit Mr. Compton to return to his position." *Id.* ¶ 122. Instead, it offered him a lesser job or the option to retire or resign. *Id.* In light of the short period of time between plaintiff's complaint and his termination and Williams's alleged harassment, plaintiff has sufficiently pleaded a causal link between his protected activity and his adverse action.

At bottom, the State's argument seems to rest on the notion that plaintiff's mental health crisis and medical leave somehow broke the causal chain between Williams's alleged harassment and his demotion. But, that is a warped view of causation.

The question is whether plaintiff adequately alleged that his protected activity was a but-for cause of his demotion or discharge. "[A] cause need not work in isolation to be a but-for cause." *Guessous*, 828 F.3d at 216-17 (emphasis in original) (citing *Burrage v. United States*, 571 U.S. 204, 211 (2014)); *see* RESTATEMENT (THIRD) OF TORTS § 26, Comment *c* (2010) (noting that many causes may be the but-for cause of the plaintiff's injury). For example, "if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." *Burrage*, 571 U.S. at 211. Further, the Supreme Court has explained that "[a] cause can be thought 'superseding' only if it is a 'cause of independent origin that was not foreseeable.'" *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996)); *see* RESTATEMENT (THIRD) OF TORTS § 34, Comment *b* ("A

17

'superseding cause' is an intervening force or act that is deemed sufficient to prevent liability for an actor whose tortious conduct was a factual cause of harm.").

In this case, construing all allegations in favor of plaintiff, as I must at this stage, plaintiff's medical leave was not a superseding cause of his termination. It was foreseeable that Bhardwaj's sexual harassment, in conjunction with Williams's reprimands of plaintiff and her assertions that he was stealing money and threatening coworkers, could trigger a mental health crisis that required plaintiff to take a leave of absence, and which ultimately resulted in his demotion or discharge. *Compare Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 759-60 (5th Cir. 2017) (finding plaintiff's refusal to fully participate in a retaliatory investigation instigated by harasser was not a superseding cause that severed the causal chain between plaintiff's protected activity and his termination), *with Weiler v. R&T Mech., Inc.*, 255 F. App'x 665, 668-69 (3d Cir. 2007) (determining causal chain between protected activity and termination was broken by plaintiff's misconduct). As a result, plaintiff's health issues and medical leave are not an "independent cause intervening between the wrong and the injury," but rather part of a "continuous succession of events, so linked together as to make a natural whole[.]" *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 474-75 (1896).

In sum, because plaintiff has alleged plausible retaliation claims, I shall deny the State Motion as to Counts Two and Four.

### IV. CONCLUSION

For the foregoing reasons, I shall GRANT the Bhardwaj Motion (ECF 26), and I shall grant in part and deny in part the State Motion (ECF 8).

An Order follows, consistent with this Memorandum Opinion.

Date: December 4, 2019 _____/s/_____
Ellen L. Hollander
United States District Judge